WIGGINTON, Judge.
The Board of County Commissioners of Glades County (County) brings this appeal from the final order of the Department of Transportation (DOT or Department) rejecting the conclusions of law of the hearing officer, finding valid DOT’s classification and jurisdictional assignment of a segment of State Road 78, and ordering that the jurisdictional transfer to the County *68 should proceed accordingly. We reverse and remand for further proceedings.
In 1987, pursuant to Section 335.-04(l)(b)l., Florida Statutes, DOT began a review of public roads within Glades County in order to assign maintenance and jurisdictional responsibilities in accordance with the current functional classification of each road. During the functional classification evaluation, a segment of State Road 78, located within the unincorporated area of Glades County, was reviewed. This paved, two-lane road segment is 14.8 miles in length and runs in an east-west direction. The western terminus of the road segment adjoins State Road 29, and the eastern terminus adjoins State Road 25 (U.S. Highway 27). State Road 78 resumes in a northerly direction beginning approximately five miles east of its terminus at State Road 25 and continues north/northeast around Lake Okeechobee proceeding into Okeechobee County.
To facilitate the classification evaluation process, DOT promulgated Chapter 14-12, Florida Administrative Code. Rule 14-12.-013(3) provides the following:
Based on the quantitative criteria set forth in this chapter and the character of service of a road in relation to the total public road system; including traffic volume, route length, truck volume, mobility, land access, and other significant factors, each public road shall be functionally classified as an urban principle arterial, urban minor arterial, urban collector, urban local road, rural principle arterial, rural minor arterial, rural major collector, rural minor collector, or rural local road.
That rule also provides for the holding of a public hearing in the county in which the road is located “in order to receive public input prior to making any final determination.” Rule 14-12.013(4).
Rule 14-12.015, in turn, sets forth the criteria for the functional classification of rural and small urban area roads. That rule provides for the determination of the quantitative criteria factor by use of the System Attribute Score (SAS). For purposes of the rule, and pertinent to the issues raised on appeal, Rule 14-12.-015(2)(a) defines “rural segment” as follows:
A rural segment is a portion of a road (or an entire road) which is being evaluated for functional classification. Segments are generally bounded by intersections with equal or higher classification roads. When performing Minimum Attribute Evaluations in rural areas, the “segment” is the portion to be tested for all attributes except Extent of Road and Mobility. In these two attributes, the length utilized for scoring is the “road,” as defined below in paragraph (2)(c).
Paragraph (2)(c) defines “rural road” as
... generally an aggregation of rural segments which comprise an extended transportation corridor. Roads generally terminate where there is a radical change in direction or function. Usually a road has the same Florida Road Number throughout its length. In rural Minimum Attribute Evaluations the “road” definition is only utilized for the Extent of Road and Mobility Attributes (emphasis added).
During the functional classification evaluation of State Road 78, DOT prepared an inventory work sheet to. determine how the road segment would be classified. The Department reviewed the six attributes set forth in Table 1 of Chapter 14-12 and arrived at an SAS score which effectively classified the road segment of State Road 78 as a rural collector. Therefore, jurisdiction under Chapter 14-12 would normally be transferred to the County.
By letter dated February 15, 1989, the County requested an administrative hearing under Section 120.57, Florida Statutes, to contest the transfer of the jurisdictional responsibilities. A formal public hearing was held at which the thrust of the County’s testimony objecting to the classification of the subject road segment centered around the condition of the road and the County’s financial inability to maintain the road. The County did not adduce evidence that DOT failed to comply with Florida Administrative Code Chapter 14-12 in its determination that the “road” to be utilized *69 in evaluating the “Extent of Road” and “Mobility” attributes was limited to that portion of State Road 78 between State Road 29 and State Road 25. Consequently, the Department did not present testimony explicating its interpretation of the definition of “Rural Road” contained in Rule 14-12.015(2)(c).
As a result of the hearing, the hearing officer concluded that four of the attribute scores were not properly assessed by DOT, including the “Extent of Road” and “Mobility” attributes. Significant to this appeal, regarding the “Extent of Road” and “Mobility” attributes, the hearing officer found in paragraphs 17 and 18 of her order that a longer segment of road should have been used to assess these scores than was used by DOT based on testimony presented at the hearing. The hearing officer concluded that certain portions of State Road 29 and State Road 25 should have been considered in establishing State Road 78 as an “extended transportation corridor” exceeding 20 miles, which would accord a greater SAS score to both of the above attributes.
Notwithstanding the hearing officer’s earlier finding that there was a “radical change in direction at both ends where the segment connects with the adjacent roads,” when the four attribute scores were reassessed, the resulting SAS score gave the segment in question a probable functional classification of a rural minor arterial, placing it within the state’s jurisdiction. Consequently, the hearing officer concluded that DOT had not established its authority to transfer the jurisdiction from the state to the County of this particular segment of road.
DOT filed exceptions to the recommended order and the Department rendered its final order on December 4, 1989. Therein, the Department rejected the hearing officer’s findings of fact in paragraphs 17 and 18 as being inconsistent with Rule 14-12.015(2)(c) and the hearing officer’s finding of fact in paragraph 3 that there was a radical change in direction at both ends of the segment. The Department concluded that the hearing officer improperly applied Rule 14-12.015(2)(c) defining “Rural Road” and stated that “pursuant to this definition, a rural road terminates where there is a radical change in direction.” The Department asserted that the hearing officer improperly considered segments of both State Road 29 and State Road 25 in determining both the “Extent of Road” and “Mobility” attributes in light of her finding that there was a radical change in direction at both ends of State Road 78.
In its two points raised on appeal, the County argues that in rejecting the hearing officer’s findings of fact in paragraphs 17 and 18, the Department failed to state that the findings were not based upon competent and substantial evidence, and also that the Department improperly substituted its own findings of fact for those of the hearing officer. However, we necessarily do not reach these points. Rather, our resolution of this cause focuses on DOT’s position that the “Rural Road” to be evaluated, as defined in Rule 14 — 12.015(2)(c), was strictly limited to that segment of State Road 78 running between State Road 29 and State Road 25 — an issue not directly litigated before the hearing officer, despite the hearing officer’s findings of fact and conclusions of law on that point, as well as the Department's own contrary findings and conclusions made in its final order to that effect.
As pointed out by DOT, it is implicit in the record that it considered the road in the instant case to be limited to that segment of State Road 78 between State Road 29 and State Road 25 due to the radical changes in direction of State Road 78 at its termini with the latter two roads. Also obvious from the Department’s final order is DOT’s view and policy that when a finding is made that there is a radical change in direction or function in the segment under evaluation, the inquiry ends for purposes of determining the “Rural Road.”
However, as the County argues, in defining “Rural Road,” Rule 14-12.015(2)(c) couches the definition in general terms, which would necessarily contemplate exceptions to the general rule. Since DOT’s interpretation of the rule differs from the clear language of the rule itself, the Coun *70 ty urges that the Department’s conclusion herein was based upon a non-rule policy susceptible of verification by evidence in the proceedings before the hearing officer. See Grove Isle v. Bayshore Homeowners’ Association, 418 So.2d 1046 (Fla. 1st DCA 1982). Absent a record foundation to support its policy concerning the rule, the Department was not free to substitute its conclusions for those of the hearing officer. Id. at 1049.
As was noted above, this was not an issue specifically raised before the hearing officer but nonetheless became the foundation of her recommended order. Although the Department was not given the opportunity to offer evidence supporting its policy it nonetheless predicated its final order on said policy. Thus, instead of vacating the Department’s final order as was done in Grove Isle, we reverse and remand for further agency proceedings on this point pursuant to Section 120.68(13)(a)l., Florida Statutes.
REVERSED, and REMANDED for further proceedings consistent with this opinion.
BARFIELD and WOLF, JJ., concur.